THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HENRY LAGMAY, #A0191119, | ) | CIV. NO. 16-00408 DKW/KJM |
| | ) | |
| Plaintiff, | ) | ORDER DISMISSING AMENDED |
| | ) | COMPLAINT IN PART |
| vs. | ) | |
| | ) | |
| MRS. SHELLEY NOBRIGA, et al., | ) | |
| | ) | |
| Defendants, | ) | |
| _____ | ) | |

## ORDER DISMISSING AMENDED  COMPLAINT IN PART

Before the Court is pro se Plaintiff Henry Lagmay's First Amended

Complaint ("FAC"), brought pursuant to 42 U.S.C. §§ 1983 and 1985.  ECF No.

18.  Lagmay is incarcerated in the Halawa Correctional Facility ("HCF") special

housing unit ("SHU").  He alleges that HCF, Department of Public Safety

("DPS"), and Office of the Ombudsman officials and staff violated his

constitutional rights.

The Court has screened the FAC pursuant to 28 U.S.C. §§ 1915(e)(2) and

1915A(b)(1) and finds that it states a cognizable claim for relief against Defendants

Adult Correctional Officers ("ACO") Levy Christensen and Kaipo Sarkissian.  The

FAC fails to state a claim against all remaining Defendants and claims against

them are DISMISSED.

The Court will issue a separate Service Order directing the United States Marshal to serve the FAC on Christensen and Sarkissian, and they will be required to respond.

## I.   BACKGROUND

### A.   Procedural History

Lagmay commenced this action by filing a lengthy, handwritten Complaint. *See* Compl., ECF No. 1 (68 pages).  He thereafter filed three additional documents that were randomly interspersed with exhibits, which the Court construed as part of the original Complaint.  *See* ECF Nos. 4 (Mot., 55 pages), 6 (Suppl., Exs. F-W, 23 pages), 7 (Suppl., Exs., 103 pages).

On September 16, 2016, the Court dismissed the Complaint with leave to amend pursuant to Rule 8 of the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  ECF No. 9 ("Dismissal Order").  The Dismissal Order carefully explained what Lagmay must do to properly amend, instructed him to limit his statement of facts to twenty-five pages, label each claim separately, and detail what each Defendant personally did or failed to do to violate his rights.

On December 22, 2016, Lagmay filed the FAC.  ECF No. 18 (135 pages). The FAC alleges that seventy-six state officials conspired to violate Lagmay's First, Fourth, Eighth, and Fourteenth Amendment rights in retaliation for his filing

2

grievances and three previous lawsuits concerning the conditions of his

confinement.[1]  *Id.*, PageID #330-372.

## B.    Summary of FAC[2]

Although the FAC's eighty-seven-page statement of facts is not presented

chronologically and is frequently confusing,[3] Lagmay appears to allege that his left

and/or right foot, ribs, arms, and/or shoulders were permanently injured while he

was incarcerated on the Mainland in 2008.  He repeatedly refers to "Exhibit L" as

evidence of these allegedly permanent injuries and to provide support for his

claims.  Exhibit L is a referral from HCF physician Dr. S. DeWitt and Defendant

---

[1]Lagmay names in their individual capacities (in alphabetical order): ACO Aceedello; Tina Agaran, RN; Counselor Jan Ahn; ACO Akau; Dep. Ombudsman Almeida; ACO Alsted; Major Lyle Antonio; ACO Arcalas; ACO Asuncion; RSA Admin. Dovie Borges; ACO Botelho; ACO Brown; ACO Burkey; ACO Castagan; Sgt. Levy Christensen; ACO Coifin; Sgt. T. Dacoscos; Lt. K. Dreg, Kimo; DPS Director Nolan Espinda; ACO Flores; ACO Fonoti; Orthopedist Dr. Frauens; Sgt. Gernler; Sgt. M. Gribin; ACO Guitguitin; Holly, RN; Contract Monitor Jinbo; Sgt. R. Jones; Lt. Kaiser; Sgt. Kami; ACO Kaninau; Sgt. Keopuhiwa; ACO Kowelski; Sgt. Kuamoo; ACO W. Lee; Mrs. Lei; Leilani, RN; Collette Leong, RN; Admin. Obmbudsman Gansin Li; Psychiatrist Libio; Lisa-Theresa, RN; Grievance Specialist T. Liu; ACO Lorico; ACO Lum; Psychiatric Admin. Magalanes; Mahina, RN; Sgt. Mareco; ACO Mulu; ACO Naole; Shelley Nobriga; Sgt. P. Olomua; ACO Olomua; Janis Palafox, RN; Sgt. Palau; Capt. Dallen Palleka; Sgt. Rodrigues; Sgt/ Rogish; Lt. D. Santiago; Sgt. Kaipo Sarkissian; HCF Warden Francis Sequeira; Counselor Mrs. Sharla; Lt. Shook; ACO T. Silva; ACO Smith; Nurse Admin. D. Stampfle; ACO Stephen; Sgt. Tafiti; Tanya, RN; Psychiatrist J. Tom; ACO Tom; Lt. Tuitama; Counselor Nolan Uehara; Val, RN; Lt. Vaovasa;  Charlotte Yuen, RN.  *See* FAC, ECF 18, PageID #330-72.

[2]These statements are taken from the FAC or Lagmay's exhibits and are accepted as true for the purposes of this Order, but are not to be construed as findings of fact.

[3]*See e.g.* FAC ECF 18, PageID #375-86 (Count I); PageID #387-402 (Counts II); PageID #403-622 (Counts III) (Lagmay identifies numerous apparently separate claims as "Count II or Count III").

C. Leong, RN, requesting Defendant Dr. Frauens to consult on Lagmay's "plantar fasciitis, [L] elbow will not fully extend,  [L] 10th rib pain (prevents lying on [L] side)."  ECF 7-4, PageID #193 (Consultation Record).  This referral is dated October 16, 2012.

Dr. Frauens' October 18, 2012 consultation response states that Lagmay complained of "incomplete extension of [R] elbow x 2 yrs;" "[R] elbow tight-contracted[;] [R] biceps tender, X-rays" negative for fracture, "dislocation[,] or sublaxation."  *Id.* (Consutant's Report).[4]  Dr. Frauens' impression was that Lagmay had a "[c]ontracted [R] elbow," for which Frauens "[i]nstructed [Lagmay] on stretching motion," and prescribed an injection that Lagmay "rejected."  *Id.*  Dr. Frauens also diagnosed "plantar fascitis," and prescribed "[p]roper footwear," per "Dr. Paderes' request."  *Id.*  This document forms the evidentiary basis for most, if not all, of Lagmay's claims.

Lagmay alleges that Defendants ACOs Arcalas, Kami, Dacoscos, Lorico, Mareco, Flores, Castagan, Smith, Asuncion, Coifin, Alsted, Jinbo, Lee, Palau, Guitguitin, Silva, Botelho, Mulu, Fonoti, Gernler, Lum, Aceedello, and Tom routinely cuffed his wrists behind his back during movements to and from his cell

---

[4]To be clear, although the Consultation Record shows that Dr. DeWitt referred Lagmay to Dr. Frauens for pain in his *left* elbow, rib, and side, Dr. Frauens' Report refers to Lagmay's reported pain on his *right* side.  ECF 7-4, PageID #193.

4

between April 28, 2015, and May 21, 2016, despite his having shown them Exhibit L. He claims this violated the Eighth Amendment. *See generally* FAC, ECF No. 18, PageID #444-58.

After DPS Director Nolan Espinda and HCF Captain Palleka approved Lagmay's transfer from the SHU to the general population, on or about August 17, 2015, Lagmay refused to transfer because he claims that he is a confidential informant, and he feared for his safety. *See id.*, PageID #412-15. ACO Lei then issued Lagmay a Misconduct Report and instructed him to ready his cell for his transfer to another segregated cell. When Lagmay reported to the security gate without the Misconduct Report, ACO Wyatt Lee directed ACO Stephen to return to the cell with Lagmay, retrieve the Misconduct Report, and ascertain that Lagmay's cell was in order. ACO Stephen affirmed that "Protocol was complete," and escorted Lagmay to his new cell. *Id.*, PageID #415.

Between September 2, 2015, and March 14, 2016, Lagmay telephoned Ombudsman staff members L. Gansin and Almeida six times to report that HCF medical staff were ignoring his requests for medical care and interfering with his grievances. He claimed that he feared for his safety. *Id.*, PageID #436-43. Gansin and Almeida allegedly replied that they could not assist Lagmay until he exhausted his claims through the DPS grievance process.

On September 20, 2015, Lagmay received a formal Notice of Report of Misconduct and Hearing, charging him with violating four DPS Policies and Procedures.[5]  *Id.*, PageId #415-17; *see also* ECF No. 7-6, PageID #266 (Ex. "#5 of 77").  The report specifically charged Lagmay with leaving thirty-four damaged grievance forms in his cell during the August 17, 2015 transfer.  Lagmay argues these charges are false because ACO Stephen had approved his cell for transfer and ACO Lei had already issued a Misconduct Report.  Lagmay was found guilty of all four charges based on "Sgt. Lee['s] reported non-compliance with order to move, damage and untidiness."  *Id.*

On February 16, 2016, Lagmay alleges that Tanya, RN, while chewing food, took his temperature without wearing gloves.  FAC, ECF No. 18, PageID #397-98.  Lagmay says he told Tanya that Dr. Frauens had sworn at him "because he was fed

---

[5]Lagmay was charged and found guilty of violating P&PM Nos.:

13.03.4a.8(11) Refusing to obey an order of any staff member, which may include a failure to comply with violations in the low moderate category.

13.03.5a.9(1) Destroying, altering or damaging government property or the property of another person resulting in damages less than $50.

13.03.5a.(9)9 Failure to follow safety or sanitary rules.

13.03.5.a.9(11) Being unsanitary or untidy; failing to keep one's person and one's quarter in accordance with posted safety standards.

*See* ECF 18-3, PageID #415-16; *see also* DPS Policies and Procedures Manual, avail. http://dps.hawaii.gov/wp-content/uploads/2015/09/COR.13.03.pdf.

up with [Lagmay] telling him that 'permanent injuries' still hurt." *Id.*, PageID #398. Tanya allegedly became angry and was unable to get a reading when she attempted to take Lagmay's blood pressure on his left arm. Lagmay asked her to use a manual blood pressure cuff on his *right* arm and claims that she "rip[ped] the velcro" from his left arm and placed it on his right arm. He asked her again to use a manual blood pressure cuff, but she allegedly ignored him. Lagmay states the strap crushed his "permanently injured right arm," causing "unbearable torque pressure." *Id.*, PageID #398.

Lagmay alleges that ACOs Christensen, Sarkissian, and Naole inspected his paperwork on April 5, 2016, approved a certain amount to keep in the cell, and took the remaining documents to storage. *Id.*, PageID #393-94. Sarkissian asked to see Lagmay's medical "Memo" for knee and elbow braces. Lagmay showed them his "Prosthesis Memo" for knee braces and a "Purchase Slip" for his elbow sleeve. *Id.*, PageID #394. He says they then confiscated these items on Tanya, RN's authority. *Id.*; *see also* Exs. G-J, M, ECF No. 7-4, PageID #188-91, 199.

On May 25, 2016, ACOs Christensen, Sarkissian, Naole, Akau, Kowelski, and Olomua transferred Lagmay to Cell 1. *Id.*, PageID #395-96, 401-02, 409-11, 419-27. Initially, they cuffed his wrists in front so that he could carry his belongings. When they arrived at Cell 1, Sarkissian removed Lagmay's handcuffs,

7

and Christensen inspected his papers.  Christensen decided Lagmay had too many papers to keep in his cell, pushed the papers through the trapdoor onto the floor, and gave Lagmay one minute to choose which papers to put in storage.

When they returned to Lagmay's cell, Sarkissian ordered him to put his wrists behind his back and raise his arms through the trapdoor to be restrained. Lagmay told Sarkissian that his permanent injuries prevented him from doing so. Sarkissian and Christensen allegedly screamed at Lagmay to comply, which he did. ACO Naole opened the door, Sarkissian confiscated Lagmay's papers in excess of 4½ inches, medical shoes, medication, and a used in forma pauperis application. Christensen told Lagmay to find the medical Memo for his shoes, and Sarkissian gave Lagmay's medication to Tanya, RN.  Sarkissian removed Lagmay's ankle restraints, and they left his cell.

Naole closed the cell door and Sarkissian ordered Lagmay to raise his wrists through the trapdoor to be uncuffed.  Lagmay again told Sarkissian that he could not, but eventually he complied with concomitant pain.  While Christensen, Naole, Akau, Kowelski, Olomua, and Tanya allegedly watched, Sarkissian sharply pulled Lagmay's wrists through the trapdoor and removed the cuffs.  Lagmay states that he felt his left biceps "rip."  *Id.*, PageID #426.

On May 28, 2016, Janis Palafox, RN, came to Lagmay's cell, apparently in response to his medical request.  *See* ECF No. 7-5, PageID #201.  Palafox examined Lagmay, noted an "egg-sized swelling on the left biceps," asked him what had happened, and questioned why he waited three days to report the incident.  ECF No. 7-4, PageID #184 (Ex. D).  Lagmay told her that he had sent a grievance to Warden Sequeira that night but feared to do more while Sarkissian was on duty.  Palafox completed a sick call report, photographed Lagmay's left biceps, administered his prescribed Indomethacin and Acetaminophen, and generated a memo allowing him to be handcuffed in front "per Sargeant's [sic] request, for 4 days when pt needs to be moved, ie to the shower."  *Id.,* PageID #181-85 (Ex. A, B, D).  Palafox ordered daily monitoring of Lagmay's left biceps and approved a referral to a medical provider if his symptoms did not improve within three days.  Lagmay received a copy of Palafox's report on June 16, 2016.

On May 30 and June 10, 2016, Lagmay submitted two more medical requests regarding his injury.  *See* FAC, ECF No. 18-3, PageID #411.  He does not detail the outcome of these requests.

Based on these facts, Lagmay alleges that all Defendants conspired to violate his constitutional rights and obstruct justice in retaliation for his having filed grievances and lawsuits regarding prison conditions.

9

## II.   STATUTORY SCREENING

The court must screen all complaints brought by prisoners proceeding in

forma pauperis or seeking relief against a governmental entity, or officer or

employee of a governmental entity.  28 U.S.C. §§ 1915(e)(2) and 1915A(a).

Complaints or claims must be dismissed if they are frivolous, malicious, fail to

state a claim on which relief may be granted, or seek relief from a defendant who is

immune from such relief.  28 U.S.C. § 1915(e)(2).  "Notwithstanding any filing

fee, or any portion thereof, that may have been paid, the court shall dismiss the

case at any time if the court determines that . . . the action or appeal . . . fails to

state a claim upon which relief may be granted."  28 U.S.C. § 1915(e)(2)(B)(ii).

## III.   PLEADING STANDARD

A pleading must contain a "short and plain statement of the claim showing

that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This requires "more

than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009).  "[A] complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.*

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."  *Id.*  A claim is plausible "when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Under 42 U.S.C. § 1983, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).  This requires factual allegations sufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 678-79; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted).  The mere possibility of misconduct, however, falls short of meeting the plausibility standard. *Iqbal*, 556 U.S. at 678; *Moss*, 572 F.3d at 969.  Leave to amend should be granted if it appears the plaintiff can correct the defects in the complaint. *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc).  When it is clear the complaint cannot be saved by amendment, dismissal without leave to amend is appropriate. *Sylvia Landfield Trust v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## IV.   DISCUSSION

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law;

11

and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Hydrick v. Hunter*, 500 F.3d 978, 987 (9th Cir. 2007) (citation and quotation marks omitted), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009); *see also West v. Atkins*, 487 U.S. 42, 48 (1988); 42 U.S.C. § 1983.

Additionally, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant, and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

## A.      Eighth Amendment

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Ingraham v. Wright*, 430 U.S. 651, 670 (1977); *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976). To prevail on a cruel and unusual punishment claim, a prisoner must prove that he objectively suffered a sufficiently serious deprivation and, subjectively, prison officials acted with deliberate indifference in allowing or causing the deprivation to occur. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991).

### 1. Excessive Force

The Eighth Amendment bars prison officials from using excessive force against inmates. *Farmer*, 511 U.S. at 832. To state an excessive force claim, a plaintiff must allege facts showing that the force involved an "unnecessary and wanton infliction of pain." *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Whitley*, 475 U.S. at 319). Whether the force inflicted unnecessary and wanton pain turns on whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quotation marks omitted); *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013). The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. *See Whitley*, 475 U.S. at 321.

### a. ACOs Present During May 25, 2016 Incident

Lagmay repeatedly told Sarkissian that he could not raise his wrists high enough from behind to put them in the trapdoor without causing him great pain. He alleges Sarkissian nonetheless forced him to comply and pulled his arms so

roughly through the trapdoor that his left biceps was demonstrably injured.  This states an excessive force claim against Sarkissian, particularly given the absence of any need to employ force and the absence of any threat that could have been perceived by Sarkissian under the described circumstances.

While a closer call, Lagmay also states an excessive force claim against Christensen.  Normally, "[b]eing a mere bystander" to a colleague's conduct does not support liability under § 1983.  *See Chuman v. Wright*, 76 F.3d 292, 295 (9th Cir. 1996) (rejecting "team effort" theory that allowed the jury to "lump all the defendants together, rather than require it to base each individual's liability on his own conduct"); *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (discussing *Chuman*).  When an officer's "integral participation" in a constitutional violation is alleged, even if that officer's actions alone do not arise to the level of a constitutional violation, § 1983 liability can be found.  *Chuman*, 76 F.3d at 294; *see also Boyd v. Benton Cty.*, 374 F.3d 773, 780-81 (9th Cir. 2004) (finding each officer involved in allegedly illegal search operation were "integral participants" and could be held liable under Fourth Amendment); *but cf.*, *Torres v. City of Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008) (finding detective who was not present when suspect was arrested, did not instruct other detectives to arrest suspect, and was not consulted by other detectives before arrest was not "integral

14

participant" in use of excessive force).  An officer can be held liable for failing to intercede only if he had a "realistic opportunity" to intercede.  *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995).

Christensen and Sarkissian are both Sergeants, suggesting they had equal authority and were directing the May 25, 2016 cell transfer.  Christensen was also aware of Lagmay's alleged permanent injuries, and, rather than object when Sarkissian ordered Lagmay to raise his arms through the trapdoor, he screamed at Lagmay to comply, suggesting they acted in concert.  These facts suggest that Christensen had a realistic opportunity to intervene, but did not, and are sufficient to state a claim against Christensen.

Other than ACOs Akau, Kowelski, and Olomua's presence during the incident, and Naole's handcuffing him *in front* and opening and closing the cell door, Lagmay alleges no facts suggesting that they were more than mere bystanders to this alleged use of excessive force.  Their mere presence is insufficient to conclude that they had authority during the incident, had reason to believe Sarkissian would harm Lagmay, had knowledge of Lagmay's permanent injuries, or had a realistic opportunity to intervene.  Lagmay's claims against ACOs Naole, Akau, Kowelski, and Olomua are DISMISSED.

### b. *ACOs Alleged to Have Cuffed Lagmay From Behind*

Lagmay alleges that ACOs Arcalas, Kami, Dacoscos, Lorico, Mareco, Flores, Castagan, Smith, Asuncion, Coifin, Alsted, Jinbo, Lee, Palau, Guitguitin, Silva, Botelho, Mulu, Fonoti, Gernler, Lum, Aceedello, and Tom cuffed him behind his back during cell movements between April 28, 2015 and May 21, 2016. He claims that, because he showed them Exhibit L, they were aware of his permanent injuries and therefore violated the Eighth Amendment.

Exhibit L is a medical report that lists Lagmay's symptoms and complaints, and records the treatment he received in October 2012, three to four years *before* he alleges these Defendants cuffed his wrists behind his back.  It does not prohibit prison personnel from cuffing Lagmay's wrists behind his back.  The only document in the record that prohibits prison staff from restraining Lagmay's wrists behind his back, of which the Court is aware is Exhibit D, Palafox's May 28, 2016 medical report that allowed him to be cuffed in front for four days after her evaluation.  *See* ECF No. 7-4, PageID #184-85 (Ex. D).  Lagmay does not assert that any ACO cuffed him behind his back after May 21, 2016, or allege facts showing that any ACO, other than Sarkissian and Christensen, maliciously and sadistically used or allowed the use of force to cause him harm.  Lagmay does not even allege that he suffered harm through these Defendants actions.

16

Lagmay fails to state an excessive force claim against ACOs Arcalas, Kami, Dacoscos, Lorico, Mareco, Flores, Castagan, Smith, Asuncion, Coifin, Alsted, Jinbo, Lee, Palau, Guitguitin, Silva, Botelho, Mulu, Fonoti, Gernler, Lum, Aceedello, and Tom, and these claims are DISMISSED.

### 2. *Medical Care*

To state an Eighth Amendment claim based on inadequate medical care, a plaintiff must allege facts showing that a defendant acted with deliberate indifference to his serious medical needs. *See Estelle*, 429 U.S. at 104; *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A medical need is "serious" if the failure to treat the condition could result in further significant injury or the "'[u]nnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). A prison official is "deliberately indifferent" if the official knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847. Deliberate indifference requires "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted); *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir.

2012) (same).  "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  *Jett*, 439 F.3d at 1096.

"Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  *Broughton v. Cutter Lab.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle,* 429 U.S. at 105-06).  Even gross negligence is insufficient to establish a cognizable claim for deliberate indifference to serious medical needs.  *See e.g. Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  Nor do differences of opinion between a prisoner and prison medical staff regarding the proper course of treatment give rise to a § 1983 claim.  *See Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012); *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

    a.    Tanya RN

Lagmay alleges Tanya roughly used an automatic blood pressure cuff to record his blood pressure, although he requested that she use a manual cuff.  He further alleges this caused excruciating pressure to his right arm.  Deliberate indifference is a very demanding standard, requiring more than mere negligence or lack of due care.  *See Farmer*, 511 U.S. 825.  Not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson v. McMillian*, 503

18

U.S. 1, 9 (1992) (discussing excessive force rather than medical care claim).  Even

civil recklessness (a failure to act in the face of an unjustifiably high risk of harm

which is so obvious that it should be known) is insufficient to establish an Eighth

Amendment violation.  *Farmer*, 511 U.S. at 837 & n.5.  It is not enough that a

reasonable person would have known of the risk or that a defendant should have

known of the risk.  *Toguchi*, 391 F.3d 1051, 1057.  Rather, a finding of deliberate

indifference requires that the defendant subjectively "knows of and disregards an

excessive risk to inmate health and safety."  *Id.* (citation and internal quotation

marks omitted).

Lagmay fails to allege facts suggesting Tanya deliberately disregarded a

serious and excessive risk of harm when she used an automatic blood pressure cuff

on his arms, even if she was somewhat rough.  Nor does he allege that further or

significant harm resulted from this single incident.  *See Jett*, 439 F.3d at 1096;

*Wood*, 900 F.2d at 1335 (delay in treatment does not constitute deliberate

indifference unless it causes substantial harm); *Shapely v. Nev. Bd. of State Prison

Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (finding denial of surgery was not

deliberate indifference unless it was harmful).  *Cf. Oliver v. Keller*, 289 F.3d 623,

627 (9th Cir. 2002) (the Prison Litigation Reform Act requires "a showing of

physical injury that need not be significant but must be more than de minimis" in

order to bring a federal civil action).  This is insufficient to show that Tanya acted

with deliberate indifference to Lagmay's serious medical needs.

To the extent Lagmay alleges Tanya denied him adequate medical care by

allegedly approving the confiscation of his shoes, medicine, and elbow sleeve, he

also fails to state a claim.  He had access to his medicine, even if he was not

allowed to keep it in his cell, *see* Exhibit L, and he alleges no resulting significant

harm from the confiscation of his shoes or sleeve.  Lagmay's Eighth Amendment

claims against Tanya, RN, are DISMISSED.

### b.      Other Medical Providers

Lagmay states that Palafox examined him, took photographs, provided him

pain medicine, recommended follow up care, and directed that he be cuffed in front

for at least four days.  These facts do not show that Palafox acted with deliberate

indifference to his health, and the claims against her are DISMISSED.

Lagmay alleges Dr. Frauens yelled at him when he continued to complain

about his permanent injuries.  He provides no other facts regarding Dr. Frauens'

medical care.  Lagmay fails to state a claim against Dr. Frauens, and these claims

are DISMISSED.

Lagmay indiscriminately names medical providers Tina Agaran, RN;

Counselor Jan Ahn; RSA Administrator Dovie Borges; Holly, RN; Leilani, RN;

Collette Leong, RN; Psychiatrist Libio; Lisa-Theresa, RN; Psychiatric

Administrator Magalanes; Mahina, RN; Counselor Mrs. Sharla; Nurse

Administrator D. Stampfle; Tanya, RN; Psychiatrist J. Tom; Counselor Nolan

Uehara; Val, RN; and Charlotte Yuen, RN without any coherent explanation of

how they denied or delayed him medical care, or facts showing their personal

involvement in his claims.  Lagmay fails to allege sufficient facts to plausibly

suggest these Defendants violated the Eighth Amendment, and these claims are

DISMISSED.[6]

## B.   Supervisory Liability and the Denial of Grievances

Lagmay appears to allege numerous Defendants are liable for his claims

based on their supervisory positions at DPS or for their denial of his grievances.[7]

---

[6]To the extent Lagmay alleges these Defendants violated his rights by denying his grievances, these claims are addressed below.

[7]Lagmay names DPS Director Nolan Espinda, Litigation Coordinator Shelley Nobriga, HCF Warden Francis Sequeira, Grievance Specialist T. Liu, RSA Administrator Dovie Borges, Captain Dallen Paleka, UTM Nolan Uehara, UTM Chair Jan Ahn, ACO Antonio, ACO Vaovasa, ACO Santiago, Counselor Sharla, ACO Gribin, ACO Dreg, ACO Tuitama,ACO Keopuhiwa, Contract Monitor Jinbo, ACO Jones,ACO Kaiser, ACO Shook, ACO P. Olomua, ACO Tafiti, ACO Rodrigues, ACO Gernler, ACO Mareco, ACO Kami, ACO Palau, ACO Dacoscos, ACO Arcalas, ACO Kuamoo, ACO Rogish, ACO Christensen, Psychiatrist Libio, Psychiatrist J. Tom, Psychiatrist Administrator Magalanes, and possibly others, regarding this claim.  *See* FAC, ECF 18-1, PageID #371-86.

### 1.    Supervisory Liability

Supervisors are not liable under § 1983 for the actions of their subordinates based on *respondeat superior* or vicarious liability.  *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013); *accord  Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013); *Lacey v. Maricopa Cty.*, 693 F.3d 896, 915-16 (9th Cir. 2012) (en banc).  "A supervisor may be held liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Crowley*, 734 F.3d at 977(quoting  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir.1989)).  "Under the latter theory, '[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is the moving force of a constitutional violation."  *Id.* (quoting *Hansen*, 885 F.2d at 646) (further citations omitted).    Although Director Espinda and Captain Paleka approved Lagmay's transfer to the general population in August 2015, he refused to transfer and alleges no harm pursuant to their approval of such transfer.

To the extent DPS has a policy requiring High Security SHU inmates to be cuffed behind their backs during movements outside of their cells, Lagmay does

22

not allege this policy, on its own, is constitutionally deficient.  Rather, he provides

documents showing this policy may be modified based on an individual inmate's

medical needs.

Lagmay asserts *no* facts showing that any supervisor Defendant personally

participated in or directed Sarkissian and Christensen's actions on May 25, 2016,

or in any other alleged violation.  *See Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th

Cir. 2011).  Lagmay's vague and conclusory statements concerning any

Defendant's alleged supervisory liability are insufficient to plausibly allege a

constitutional violation, and these claims are DISMISSED.  *See Ivey v. Board of*

*Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

### 2.      *Denial of Grievances*

To the extent Lagmay alleges any Defendant violated his constitutional

rights by denying his grievances, he fails to state a claim.  A defendant's

participation in an administrative appeal process is an insufficient basis on which

to state a federal civil rights claim.  *See, e.g., Ramirez v. Galaza*, 334 F.3d 850, 860

(9th Cir. 2003) (holding that a prisoner has no constitutional right to an effective

grievance or appeal procedure); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.

1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) ("[A prison]

grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.")

That is, "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the [underlying] violation." *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) (holding that only persons who cause or participate in civil rights violations can be held responsible); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison officials whose only roles involved the denial of the prisoner's administrative grievances cannot be held liable under § 1983); *Moore v. Horch*, 2017 WL 35514, at *3 (E.D. Cal. Jan. 3, 2017); *Wright v. Shapirshteyn*, 2009 WL 361951, *3 (E.D. Cal. Feb.12, 2009) (noting that "where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983 "); *Velasquez v. Barrios*, 2008 WL 4078766, *11 (S.D. Cal. Aug. 29, 2008) ("An official's involvement in reviewing a prisoner's grievances is an insufficient basis for relief through a civil rights action."). Lagmay's allegations that any Defendant violated his rights based on their participation in his grievance process are insufficient to state a claim and are DISMISSED.

24

### 3.     *Defendants Gansin and Almeida*

Lagmay alleges Office of the Ombudsman staff Gansin and Almeida are liable for his claims based on their putative supervisory role and failure to intervene after he telephoned them.

First, Lagmay does not allege that Gansin and Almeida participated in or directed any constitutional violation or promulgated unconstitutional policies that harmed him.  Second, the Office of the Ombudsman may investigate claims alleged against state agencies and report findings, but it has no enforcement powers, and the Ombudsman's opinions are only advisory.  *See* Haw. Rev. Stats. §§ 96–4, –12, –13, –15.  Moreover, under Hawaii law, decisions or proceedings by the ombudsman are immune from judicial review.  *See Karagianes v. Hawaii Ombudsman*, 2014 WL 624924, at * (Haw. App. Feb. 14, 2014); *see also* Haw. Rev. Stats. § 96–17 ("No proceeding or decision of the ombudsman may be reviewed in any court, unless it contravenes the provisions of this chapter. The ombudsman has the same immunities from civil and criminal liability as a judge of this State.") .  Lagmay fails to state a claim against Gansin and Almeida, and his claims against them are DISMISSED.

## C.      Conspiracy: 42 U.S. C. § 1985(2)

To state a claim for conspiracy to obstruct justice in violation of § 1985(2), a plaintiff must plead that "two or more persons conspire[d] for the purpose of impeding, hindering, obstructing, or defeating . . . the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws." 42 U.S.C. § 1985(2). Section 1985 therefore requires "an allegation of class-based animus" to state a claim. *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 908-09 (9th Cir. 1993). A § 1985(2) claim cannot be maintained without a cognizable § 1983 claim. *See Caldeira v. Cty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) ("[T]he absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations.").

Lagmay fails to allege any facts showing that any Defendant acted against him because of "class-based animus." *Portman*, 995 F.2d at 908. Rather, he explicitly asserts Defendants retaliated against him for filing lawsuits and grievances.

Moreover, Lagmay fails to allege facts showing any Defendants had "'an agreement' or meeting of the minds' to violate [his] constitutional rights.'" *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (citation omitted). He also fails to state a cognizable § 1983 against any Defendant other than Sarkissian and

Christensen, which precludes a conspiracy claim against all other Defendants.  *See Caldeira,* 866 F.2d at 1182 (stating a conspiracy claim under § 1985 requires a cognizable claim under § 1983 to proceed).  Lagmay's conspiracy claims are DISMISSED for failure to state a claim.

**D.    Retaliation**

To state a retaliation claim, an inmate must allege that: (1) a state actor took an adverse action against him; (2) because he engaged in constitutionally protected conduct; (3) the adverse action chilled the exercise of his First Amendment rights; and (4) did not reasonably advance a legitimate correctional goal.  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

Lagmay has filed hundreds of grievances and three previous lawsuits regarding his conditions of confinement.  Lagmay states sufficient details to plausibly allege that Sarkissian and Christensen retaliated against him for filing grievances against them.  It is less clear how their conduct "chilled" the exercise of his rights, but this claim shall proceed against Sarkissian and Christensen subject to further adversarial proceedings.  Lagmay's retaliation claims against all other Defendants are DISMISSED for failure to state a claim.

E.    **Illegal Seizure of Property**

Lagmay alleges Sarkissian and Christensen unlawfully confiscated his

medical shoes, medication, elbow sleeve, and wrist brace in violation of the Fourth

Amendment.  The Fourth Amendment does not protect an inmate from the seizure

and destruction of his property.  *Hudson v. Palmer*, 468 U.S. 517, 524, 528 n.8

(1984); *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  This does not mean that a

prisoner has no redress for the loss of property; it means such redress arises under

the Due Process and/or Takings Clauses of the Fifth and Fourteenth Amendments,

rather than under the Fourth Amendment.  *Hudson*, 468 U.S. at 540.

The confiscation of Lagmay's property fails to state a claim under the

Fourteenth Amendment, however, because the *unauthorized* deprivation of

property does not state a claim under § 1983 if the state provides an adequate

post-deprivation remedy.  *Id.* at 533 (holding this is true regardless of whether the

loss was intentional or negligent).  Hawaii law provides such an adequate

post-deprivation remedy.  *See* Haw. Rev. Stat. § 662-2; *cf. Barnett v. Centoni*, 31

F.3d 813, 816–17 (9th Cir. 1994) (per curiam) (analyzing prisoner's due process

claim under California's tort statutes).  Lagmay alleges he has authorization for

this property.  If true, the confiscation of his property was *unauthorized* and he has

an adequate state law remedy (if he has not prevailed through the grievance

28

process).  Lagmay's claim regarding the confiscation of his personal property fails to state a claim and is DISMISSED.

## V.   <u>LEAVE TO AMEND</u>

The FAC is DISMISSED in part with leave to amend as discussed above. 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b); 42 U.S.C. § 1997e (c)(1).  Lagmay may file an amended complaint on or before March 15, 2017 that cures the deficiencies noted in this Order and heeds the Court's directions.  Lagmay must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii if he elects to amend his pleading.

Lagmay is NOTIFIED that any amended complaint must be short and plain and comply with Rule 8 of the Federal Rules of Civil Procedure and that an amended complaint generally supersedes the preceding operative complaint.  *See Ramirez v. Cty. of San Bernadino*, 806 F.3d 102, 1008 (9th Cir. 2015).  Local Rule 10.3 requires that an amended complaint be complete in itself without reference to any prior pleading.  Defendants not renamed and claims that are not realleged in an amended complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa Cty.*, 693 F.3d 896, 928 (9th Cir. 2012).  Each claim and the involvement of each Defendant must be sufficiently alleged.

If Lagmay chooses to file an amended complaint he is NOTIFIED that **his statement of facts is strictly limited to twenty-five pages**.  Lagmay must heed this warning.  The Court will not accept another confusing and voluminous pleading, in violation of the Court's orders, that is excessively long, does not constitute a short and plain statement, and refers to previous pleadings, exhibits, or documents to make sense.  Any amended pleading that fails to comply with this direction will be STRICKEN.

## VI.   <u>CONCLUSION</u>

(1) The First Amended Complaint is DISMISSED IN PART.  Specifically, Lagmay states a claim against Defendants Kaipo Sarkissian and Levy Christensen for retaliation and excessive use of force, and these claims shall proceed.  Sarkissian and Christensen SHALL file a response to the First Amended Complaint.

(2) All other claims, including claims for inadequate medical care, conspiracy, illegal seizure of property, denial of grievances, and failure to intervene as alleged against ALL OTHER DEFENDANTS are DISMISSED without prejudice.

(3) The Court will issue a separate Service Order directing the U.S. Marshal to serve the Complaint and Summons on Defendants Sarkissian and Christensen at Lagmay's direction.

(4) Lagmay may file an Amended Complaint curing the deficiencies discussed above on or before March 15, 2017.  If Lagmay's amended pleading does not comply with this Court's explicit directions, it will be STRICKEN.

IT IS SO ORDERED.

DATED: February 9, 2017 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

_Henry Lagmay v. Shelley Nobriga, et al._; Civil No. 16-00408 DKW-KJM;
**ORDER DISMISSING AMENDED COMPLAINT IN PART**

_Lagmay v. Nobriga, et al._,1:16-00408  DKW/KJM; scrng 2017 Lagmay 16-408 dkw (FAC dsm prt ord svc)