IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| HENRY LAGMAY, #AO191119, | ) | CIV. NO. 16-00408 DKW-KJM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION FOR |
| vs. | ) | SUMMARY JUDGMENT |
| | ) | |
| SHELLEY NOBRIGA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Before the court is Defendants Levy Christensen's and Kaipo Sarkissian's Motion for Summary Judgment. ECF No. 74. Defendants assert that Plaintiff Henry Lagmay failed to fully exhaust available prison administrative remedies prior to filing this suit, as required by the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). Lagmay has filed his Opposition, ECF No. 79, and Defendants have filed a Reply, ECF No. 80.

The court agrees that Lagmay failed to exhaust available administrative remedies prior to filing this action. There is no basis in the record to excuse this failure, and Defendants Sarkissian's and Christensen's Motion is GRANTED.

1

The Clerk is DIRECTED to terminate this action without prejudice and close the file.

## I. BACKGROUND

On or about July 17, 2016, Lagmay commenced this action while he was incarcerated at the Halawa Correctional Facility ("HCF").[1] *See* Compl., ECF No. 1. On August 24, 2016, Lagmay filed a Supplement to the Complaint with numerous exhibits attached to support his claims. *See* ECF Nos. 6, 7. The Court construed these documents together as Lagmay's initial pleadings. Lagmay broadly alleged that more than seventy HCF officials and others conspired to retaliate against him for filing numerous grievances and three previous lawsuits against prison officials. Lagmay repeatedly referred to an incident that allegedly occurred at HCF on May 25, 2016, in which he claimed Defendants Sarkissian and Christensen retaliated against him for filing suits and grievances by roughly cuffing him behind his back during a cell transfer, re-injuring his left arm and leaving his legal paperwork in disarray.

On September 16, 2016, the court dismissed Lagmay's pleadings for his failure to comply with the Federal Rules of Civil Procedure and Local Rules for the

---

[1]Because Lagmay signed the Complaint on July 17, 2016, that is the date the court accepts as the date he brought this suit. *See Houston v. Lack*, 487 U.S. 266, 271 (1988) (explaining prison mailbox rule); *Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009).

District of Hawaii.  ECF No. 9.  This Order granted Lagmay leave to file an amended pleading to cure the noted deficiencies in the Complaint.

Lagmay filed the First Amended Complaint ("FAC") on December 22, 2016.  ECF No. 18.  He again alleged that more than seventy defendants were retaliating against him for filing grievances and lawsuits.  The FAC also realleged and clarified his claims that Sarkissian and Christensen had re-injured his left biceps when they cuffed his wrists behind his back through his cell's trapdoor on May 25, 2016, and interfered with his legal papers, allegedly in retaliation for his filing grievances and lawsuits against them and others.

On February 9, 2017, the court found that Lagmay's retaliation and excessive force claims against Sarkissian and Christensen were colorable and directed that they be served.  *See* Orders, ECF Nos. 20 and 21.  The court dismissed all remaining claims and Defendants for Lagmay's failure to state a claim.  Order, ECF No. 20.

On November 28, 2017, Sarkissian and Christensen waived service of the summons and answered the FAC.  Answer, ECF No. 56.  On April 5, 2018, Sarkissian and Christensen filed an amended Answer.  ECF No. 69.

On June 1, 2018, Sarkissian and Christensen moved for summary judgment for Lagmay's alleged failure to exhaust available administrative remedies.  Mot.,

ECF No. 74. Lagmay has filed his Opposition, ECF No. 79, and Sarkissian and Christensen have filed a Reply, ECF No. 80.

## II. LEGAL STANDARD

Summary judgment is proper when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" when a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). On summary judgment, the court's role is to verify whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cty.*, 693 F.3d 1122, 1132 (9th Cir. 2012).

A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). That is, the moving party must demonstrate through authenticated evidence that the record forecloses the possibility of a reasonable trier-of-fact finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court must view all evidence and any inferences in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

If the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). This requires the nonmoving party to "show more than the mere existence of a scintilla of evidence. . . . In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat a summary judgment motion only by setting forth specific facts that

illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, *see* Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a pro se litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge, set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III. <u>DISCUSSION</u>

**A.     42 U.S.C. § 1997e(a)**

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854-55 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citation omitted). Requiring exhaustion allows prison officials "an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court." *Id.* at 204. The "exhaustion requirement does not allow a prisoner to file a complaint addressing non-exhausted claims." *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010); *McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) ("a prisoner does not comply with [the exhaustion] requirement by exhausting available remedies during the course of the litigation").

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)(citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 136 S. Ct. at 1862. Thus, "an inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth*, 532 U.S. at 738).

*Ross* outlined three limited "circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *Id.* at 1859. They are: (1) the "administrative procedure . . . operates as a simple dead end–with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) the "administrative scheme . . . [is] so opaque that it becomes, practically speaking, incapable of use . . . so that no ordinary prisoner can make sense of what it demands;" and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60 (citations omitted). Beyond these three circumstances demonstrating the unavailability of an administrative remedy, the mandatory language of 42 U.S.C. § 1997e(a) "foreclose[s] judicial discretion," which "means a court may not excuse a failure to exhaust, even to take [special] circumstances into account." *Ross*, 136 S. Ct. at 1856-57.

Failure to exhaust is an affirmative defense. *Bock*, 549 U.S. at 216. The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant carries his burden, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local

remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

B.      **Hawaii Prison Administrative Remedies**

The Hawaii Department of Public Safety ("DPS") has an "Inmate Grievance Program (IGP)" through which Hawaii state prisoners may grieve their claims with prison officials before raising them in federal court. *See* Defs.' Concise Statement of Facts ("CSF"), Ex. A, ECF No. 35-2 (DPS Corrections Administration Policy No. COR.12.03, eff. July 1, 2015). COR.12.03 applies to all Hawaii inmates regarding incidents that arose while an inmate is incarcerated at a correctional facility in Hawaii. *See id.*, COR.12.03.4.1.

COR.12.03.8 sets forth a three-step procedure for resolving prisoner complaints. Generally, after a prisoner has tried to informally resolve an issue, they must file an initial Step 1 grievance within fourteen days of the incident grieved, subject to certain exceptions. COR.12.03.8.1-2.

If the grievance is in proper form and is accepted, it is considered filed on the date that it is logged into the Corrections Information Management System (currently, "Offendertrak") by the Facility Grievance Officer ("FIGO") or Inmate Grievance Specialist ("IGS"). COR.12.03.10.1. The IGS or FIGO has twenty

working days from that date to respond in writing, but may take an additional twenty working days if necessary. COR.12.03.10.1-3.

If the inmate is dissatisfied with the prison's response, he may file a Step 2 appeal to the Warden/Branch/Core Program Administrator within five days of receiving the response. If dissatisfied with the appeal response, the inmate may file a Step 3 appeal to the Division Administrator within five days of receiving the response. COR.12.03.10.5. If the inmate receives *no* response within the time allotted for the particular level of the grievance (including the additional twenty day extension at any level), he should consider this as a denial and proceed to the next step. COR.12.03.10.4. The IGP notifies prisoners that, "[n]o stage of the grievance program should be deleted as each step provides a level at which administrative action can be taken." COR.12.03.8.3(c).

If a prisoner "reasonably believes the issue is sensitive," or fears for his safety if he pursued the normal grievance procedure, he may submit a grievance directly to the Division Administrator in a sealed envelope that is marked "Confidential." COR.12.03.8.3(b).

The Inmate Grievance Program also contains provisions for allowing a grievance to be given emergency status. These types of grievances may require "an immediate resolution or a more expedited process," and are put on a fast-track

process. COR.12.03.8.3(c). The IGP explicitly notifies prisoners that completion of all three steps is normally required before filing litigation in the federal courts. *See* COR.12.03.4.7.

**C.     Defendants' Argument**

Sarkissian and Christensen argue that Lagmay failed to fully exhaust his available prison administrative remedies because he never appealed any grievance regarding the May 25, 2016 incident through the final Step 3 appeal. Lagmay submitted three Step 1 grievances relating to the May 25, 2016 incident on June 7, 2016, approximately twelve days after the incident.[2] *See* Defs.'CSF, ECF No. 75-4 (Ex. B), PageID #1235-38 (Grievance Nos. 169038, 169039, and 169040). These grievances were each stamped as received on June 8 and logged into Offendertrak on July 27, 2016.[3]

   *1.     Step 1 Grievance Nos. 169038 and 169040*

In Step 1 Grievance No. 169038, Lagmay complains that Sarkissian and Christensen used excessive force and interfered with his legal paperwork when

---

[2] It appears that Lagmay believed he was grieving three separate issues regarding the May 25, 2016 incident: (1) Sarkissian's and Christensen's actions; (2) his need for medical care; and (3) his claim that other officers failed to protect him during the incident. *See* COR.12.03.3(a).

[3] Defendants do not explain the lag between the date these grievances were received and the date they were logged into Offendertrak, nor whether a prisoner is told the date that a grievance is logged into Offendertrak, so that he can anticipate the day a response is due.

11

they transferred him to a new cell on May 25, 2016. *See id.*, PageID #1235. He claims that they re-injured his left biceps.

In Step 1 Grievance No. 169040, Lagmay alleges that Officers Naeole, Kowelski, Akau, and Olomua, who were apparently present during the May 25 incident, failed to protect him from the alleged excessive force, putting him in imminent danger and denying him due process. *See* ECF No. 75-4, PageID #1238.

On August 24, 2016, two days before the twenty-day period for responding to these grievances expired, as calculated from the date they were logged into Offendertrak, HCF Captain Dallen Paleka responded to both grievances. Paleka informed Lagmay that the incident would be investigated and notified him that he had five days to appeal if he was dissatisfied with this decision. *Id.*, PageID #1235 and 1238. It appears Lagmay received these responses on August 29, 2016, although he did not initial the receipt.

### 2. *Step 1 Grievance No. 169039*

In Step 1 Grievance No. 169039, Lagmay complained that his left biceps was re-injured on May 25, 2016, when he was subjected to excessive force during a cell transfer. ECF No. 75-4, PageID #1236. Lagmay did not identify who allegedly used excessive force against him, confining this grievance to his injury

12

and need for medical care. He claimed that his pain was unmanageable, his left biceps was disfigured, and that he required surgery.

Apparently because of the medical nature of this complaint, and because Lagmay filed the other two grievances on the same day regarding the May 25, 2016 incident, this grievance was referred to the HCF Medical Unit for a response.

On August 1, 2016, twenty-four days before a response was due, Tina Agaran, RN, replied:

> I have reviewed your Grievance (#169039) and medical record. You were scheduled with C. Yuen NP for clinic appts. on May 13, 2016, which you refused, on July 13, 2016, which you cxld [canceled] and you have been seen by multiple nurses before and between these appts. You have been rescheduled with C. Yuen NP on her next clinic at the SNF [Special Needs Facility]. Please do not cancel this appt. C. Yuen NP is the provider that will be able to refer you for specialty appts. if medically indicated.

*Id.*, PageID #1237. Agaran told Lagmay that he had five calendar days in which to appeal if he was dissatisfied with this response. Lagmay received Agaran's response on August 2, 2016, but did not initial his receipt.

3. ***Step 2 Appeal No. 169073***

On August 7, 2016, exactly five days after Lagmay received Agaran's response, he signed Step 2 Appeal No. 169073. *See* ECF No. 75-4, PageID #1239. Lagmay treated this Step 2 Appeal as an opportunity to appeal his claims against Sarkissian and Christensen, rather than as an appeal to Agaran's letter. Lagmay

13

labeled this Step 2 Appeal as an "Emergency," but HCF prison officials did not treat it as such.[4] *See* ECF No. 75-3, Ex. A (Policy No. COR.12.03.8.3(c)). Step 2 Appeal No. 169073 was received August 9 and logged into Offendertrak on September 22, 2016.

Lagmay first states that he tried to resolve his issues with Captain Paleka on July 29, 2016, but it is unclear to what he refers. He continues:

> On Tuesday July 26, 2016, Aprox. Time Between 7:15 Am and 7:30 Am in the Morning at the Halawa High Security Facility SHU Cell 1[,] After Breakfast And Receiving My Medication From AM Med. Pass. Nurse Mrs. Tanya[,] Sgt. Mr. Sarkissian Tells Me To Pack My Things Up - Because Your Moving to Cell #9[.] I Tell Sarkissian I Am Not Moving With You On The Floor After You Permanently Injured Me – Please Call The Lt. Sarkissian Tells Me That[']s An Order. You Pack Your Fucking Shit up Right Now – I Tell Him Please Call The Lt. – 5 Minutes Later[,] Sgt. Mr. Sarkissian Returns And Tells Me – You Better Pack Your Shit Up. I Tell Him Please Call the Lt. Sgt. Mr. Christensen Walks Pass My Cell – 15 Minutes Later Sgt. Mr. Christensen Returns and Yells [at] Me[,] You Better Pack Your Fucking Shit up Right Know [sic]. The Lt. Does Not Want To Speak To You So You Better Pack up Your Fucking Shit Before I Come in There and Kick Your Fucking Ass You Hear Me – Then Walks Away – 5 Minutes Later Sgt. Mr. Maguire Tells Me That the Warden Had Told Sarkissian and Christensen to Stay Of[f] the Floor So I Can Move You. I Tell Maguire What about My Legal Work[,] I Don't Want Sarkissian to Touch It. Maguire Tells Me He Won't. Upon Placing My Legal Work on Push Cart Maguire Then Tells Me to Turn Around So That I Can Be Cuffed in the Back - I Tell Maguire Can You Please Cuff on the Front[.] Mr. Kowelski Then Tells Me Just

---

[4]Perhaps because, as Lagmay concedes in the appeal, Sarkissian and Christensen had already been ordered to refrain from contact with Lagmay.

14

Fucking Turn Around and Cuff in the Back Cell 9 Is Right There You Giving Everybody Hard Time – Upon Reaching Cell-9 ACO Mr. Kowalski (?)

On October 4, 2016, Warden Scott O. Harrington responded:

HCF staff followed policy regarding legal papers you are allowed to retain within the special holding unit.

Your claim of a permanent injury caused by security staff is unfounded. The preliminary investigation concerning your allegations against staff on May 25, 2016 (Grievance #169040) revealed that security staff acted within the scope of their duties.[5] Medical and other inmates did not confirm your allegations of assault and harassment by security staff.

Your grievance is denied.

*Id.*, PageID No. 1239. Harrington notified Lagmay that he had five calendar days within which to file an appeal; Lagmay received this denial on October 7, 2016.

DPS Division Administrator Shari Kimoto states, "I have conducted a thorough search of the inmate grievances submitted by Henry Lagmay, #A0191119, and found that there is no third-step grievance in Mr. Lagmay's file pertaining to allegations of excessive force by [Sarkissian and Christensen] on or about May 25, 2016, or pertaining to allegations or a complaint that excessive force by [Sarkissian and Christensen] on or about May 25, 2016 was retaliation for

---

[5]Although Harrington's response noted that he was responding to Grievance No. 169040, it is clear that he was also responding to the allegations in No. 169038.

grievances filed by Mr. Lagmay against [Sarkissian and Christensen]." Kimoto Dec., ECF No. 75-1, ¶ 9.

Sarkissian and Christensen show that there was an available grievance program at HCF, Lagmay understood and used that program, and that Lagmay failed to fully exhaust that program pursuant to the requirements of the IGP before commencing this action on July 17, 2016. Lagmay must now "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172 (citing *Hilao v. Estate of Marcos*, 103 F.3d 767, 778 n.5 (9th Cir. 1996)).

## C. Lagmay's Opposition

Lagmay must explain why he failed to pursue his grievances concerning the May 25, 2016 incident through a final Step 3 appeal before he brought this action to the federal court. Lagmay argues only: "The Vast Amount of Grievances Clearly Beyond Reasonable Doubt Alerted Prison Officials and City Officials to the Nature of the Wrongs; for Which Redress Is Sought/'Nothing Is Done' Leading to State Impact!!!" Pl. Opp'n, ECF No. 79, PageID #1261. In support of this argument, Lagmay attaches sixty grievances to his Opposition, to show that he filed numerous complaints against Sarkissian, Christensen, and others. *See id.*,

PageID #1271-74, 1282-1332, 1327-37. The court also carefully reviewed thirty-five grievances attached to Lagmay's Supplement to the original Complaint to make sense of Lagmay's argument and determine whether he had fully-grieved his claims. *See* ECF Nos. 7-2, 7-5, 7-6.[6]

First, Lagmay's argument that the "vast" number of grievances he has filed proves that he exhausted the IGP with regard to the May 25, 2016 incident is not persuasive. Nothing within these grievances, most of which were filed before the May 25, 2016 incident, shows that Lagmay fully exhausted his claims relating to that incident. Nor has the court discovered any precedential case law that supports this novel argument.

Rather, the "vast" number of grievances Lagmay filed, as well as the detail and content of those grievances that are in the record, show that Lagmay was intimately familiar with and extensively used DPS's grievance system. *See Banks v. Fed. Bureau of Prisons*, 2013 WL 1200301, at *3 (E.D. Ark. Feb. 12, 2013) ("It is clear from the records and affidavit presented by the Defendants . . . that Plaintiff was familiar with the procedures required for filing a grievance, since he filed over two hundred administrative remedy requests since 2005); *Wilson v. Lohman*, 2011 WL 1167906, at *3 (D. Del. Mar. 29, 2011) (finding that inmate's filing one

---

[6]Some of the grievances are in both documents.

hundred and fifteen grievances supports the conclusion that the inmate was aware of and understood how to file and exhaust his claims). Moreover, there are at least seven Step 2 appeals and one Step 3 appeal (dated Nov. 3, 2015) in the record, showing that Lagmay clearly understood how to appeal the denial of a grievance or appeal.

Lagmay's grievances and their responses show that the DPS IGP was neither "so opaque that it becomes . . . incapable of use," nor "a simple dead end" that he was unable to understand. *Ross*, 136 S. Ct. at 1859-60. For example, in response to Step 1 Grievance No. 169039, Agaran explained to Lagmay what had already been done for him in regard to his medical complaints, and what steps he should take to ensure that his pain and injury were managed. In response to Step 1 Grievance Nos. 169038 and 169040, Lagmay was told that the facility was investigating the incident, and by his own admission, Sarkissian and Christensen were ordered by the Warden to leave the floor on June 21, 2016, when he was moved to another cell. Nor does the record support a finding that HCF officials thwarted Lagmay's attempts to use the grievance system in any manner. *Id.*

Second, Lagmay does not dispute that Defendants' verified evidence shows that he brought this action *before* he received a response to his three Step 1 grievances and *before* he pursued a Step 2 appeal of the May 25, 2016 incident.

Lagmay signed the original Complaint exactly forty working days after he submitted his Step 1 grievances, indicating that he was aware of but misunderstood the time that HCF officials had to reply to his grievances. Yet he clearly knew that he had to appeal Agaran's reply within five days of its receipt, and did so. That is, Lagmay fails to explain why he was unaware that he could not proceed directly to court if a response to his grievances or appeals was untimely, yet otherwise knew of and complied with the time requirements of the IGP.

Viewing the entire record in the light most favorable to Lagmay, it is clear that he brought this suit before he fully exhausted his claims against Defendants Sarkissian and Christensen. Lagmay had an available administrative remedy that he clearly understood, yet he failed to fully exhaust his claims in this action. *Ross* demonstrates that the mandatory language of the PLRA prevents a court from excusing a failure to exhaust in any case where the availability of administrative remedies is not in issue. 136 S. Ct. at 1857. Lagmay has not carried his burden of showing that administrative remedies were unavailable to him before he commenced this action, through intimidation or otherwise.

## IV. CONCLUSION

Defendants Christensen's and Sarkissian's Motion for Summary Judgment is GRANTED. This action is DISMISSED without prejudice for Lagmay's failure to exhaust his available prison administrative remedies before he brought this action to court. *See* 42 U.S.C. § 1997e(a). The Clerk is instructed to enter judgment and terminate this action. Any pending motions are DENIED.

IT IS SO ORDERED.

DATED: August 31, 2018 at Honolulu, Hawaii.



/s/ Derrick K. Watson
Derrick K. Watson
United States District Judge

---

*Henry Lagmay v. Shelly Nobriga, et al.*; Civil No. 16-00408 DKW-KJM; **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**


*Lagmay v. Nobriga,* No. 1:16-cv-00408 DKW-KJM; Exh '18 Lagmay 18-408 dkw (no 3d step GRT MSJ)